UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK DERON REMUS,

    Petitioner,

v.

NOAH NAGY,

    Respondent.

Case No. 18-10969
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1]**

Derrick Deron Remus was accused of firing gunshots into a house party and killing two people. Following a jury trial in Michigan state court, Remus was convicted of two counts of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, intentional discharge of a firearm at a dwelling or potentially occupied structure, Mich. Comp. Laws § 750.234b, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to 37 to 62 years' imprisonment.

Remus' convictions were affirmed on appeal and he now brings this pro se habeas case pursuant to 28 U.S.C. § 2254. Remus asserts claims of prosecutorial misconduct and ineffective assistance of trial counsel. Finding no merit in the claims, the Court denies the petition for a writ of habeas corpus and a certificate of appealability.

# I. BACKGROUND

Remus' convictions arise out of a drive-by shooting at a woman's home during a June 2014 party in Detroit, Michigan. The Court accepts the facts as found by the Michigan Court of Appeals unless the factual findings are unreasonable, 28 U.S.C. § 2254(d)(2), or are rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1). The appellate court described the underlying facts as follows:

> During the evening of June 25, 2014, Yalondthe Williams (Yalondthe) invited friends and family members to her home located on West Grand Street in Detroit. After the guests arrived, Yalondthe talked with defendant on the telephone, and defendant asked to come over. Yalondthe had met defendant one month prior, and the two talked on and off. Yalondthe told defendant not to come over until her guests left her home. Despite this instruction, defendant came to the home while people were still over. While outside of the home, defendant attempted to get Yalondthe to speak with him, but was rebuffed. Yalondthe told defendant to leave her home. Two guests at the party, Daylon Randall and Robert Beverly, also told defendant that he should leave.
>
> Yalondthe then proceeded to walk into her home and enter the bathroom. Yalondthe then called defendant and asked him why he was bothering her. In response, defendant stated, "I'm from Linwood. I'm about to show you how I get down." Approximately five minutes later, Yalondthe heard gunshots.
>
> Another guest at the party, Tyrone Walker, saw defendant walking down the street toward the home of defendant's relative. As defendant was walking away, Walker overheard defendant stating, "Give me the gun, give me the gun." Approximately 20 minutes later, Walker observed a red vehicle drive up slowly toward Yalondthe's home. The back rear window rolled down and defendant fired one shot into the air. Walker testified that although it was dark outside, he was able to identify defendant because the flash from the gun illuminated defendant's face. The car then drove in front of Yalondthe's house, and defendant fired multiple shots toward the home. Walker ran away after seeing defendant fire the first gunshot, and he was not hit with any bullets. Randall and Beverly were killed during the incident, and a man named Randy Brooks was injured by a bullet.

> After hearing the gunshots from inside of her home, Yalondthe rushed outside to see what had occurred. When she walked outside, Yalondthe witnessed Walker cradling Beverly. Walker was hysterical and told Yalondthe that he saw defendant drive by the house and shoot. Walker told the police at the scene that the shooter was "Yalondthe's ex-boyfriend," but he identified defendant by name as the shooter during his second police interview later that day. He explained at trial that he did not want to identify defendant by name at the scene of the incident because members of defendant's family were nearby.
>
> Devin Fernandez, a cousin of Walker and Beverly, received a telephone call from Walker after the incident and rushed to the scene to check on the condition of his family members. After he disrupted the police investigation, he was arrested and taken to the Mound Detention Center. While in a holding cell, Fernandez overheard defendant, who was also in the holding cell, admit to another inmate that he was responsible for the double murder at Linwood and West Grand. Fernandez had never seen defendant before he encountered him in the holding cell.

*People v. Remus*, No. 327599, 2016 WL 5930109, *1–2 (Mich. Ct. App. Oct. 11, 2016) (unpublished, per curiam) (footnote omitted).

Following his convictions and sentencing, Remus filed an appeal of right with the Michigan Court of Appeals raising the same claims presented here on habeas review. The court denied relief on those claims and affirmed Remus' convictions and sentences. *Id*. at *2–5. Remus then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Remus*, 500 Mich. 983, 893 N.W.2d 630 (2017).

Remus then filed this federal habeas petition, raising the following claims: (1) denial of his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through the prosecutor's improper argument, and (2) ineffective assistance of counsel through

3

failure to object. (ECF No. 1.) The warden responds that the prosecutorial misconduct claim is procedurally defaulted and, in any event, both claims lack merit. (ECF No. 8.)

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III. Analysis

### A. Prosecutorial Misconduct

Remus believes the prosecutor made two improper statements in his closing argument that rise to the level of prosecutorial misconduct. Remus contends that the

4

prosecutor mischaracterized the testimony of Yalondthe Williams and Tyrone Walker by arguing that they identified Remus as the shooter. (ECF No. 1, PageID.35.) He also says there was no evidence in the record that allowed the prosecutor to argue that the gun muzzle flash was extremely bright. (*Id*. at PageID.36.)

Because defense counsel failed to lodge a contemporaneous objection to these closing argument statements during trial, the Michigan Court of Appeals reviewed this prosecutorial misconduct claim under a plain-error standard. *Remus*, 2016 WL 5930109, at *2. While Nagy urges that this claim is procedurally defaulted, the Court will bypass the procedural default analysis because it is more efficient to proceed directly to the merits of the claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

AEDPA's deferential standard of review applies to a state court's plain-error analysis of a defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard). While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they can make arguments based upon

5

the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

The Michigan Court of Appeals applied these legal principles under similar state law and adjudicated the claim on the merits. First, with respect to Remus' challenge to the prosecutor's statement that Yalondthe and Walker positively identified Remus as the assailant, the appellate court found:

> A review of the prosecutor's closing argument demonstrates that the prosecutor was merely summarizing the testimony of Yalondthe and Walker in order to rebut defense counsel's theory that Yalondthe and Walker had conspired to frame defendant for the shooting. The prosecutor noted that Walker told Yalondthe that defendant was the assailant immediately after the shooting took place while Walker was in a very emotional state. The prosecutor noted that a responding officer confirmed that Walker was hysterical and that Yalondthe told officers of Walker's statement in the immediate aftermath of the shooting. Walker also identified defendant as the shooter in his second interview with police. The prosecutor argued that this undermined the contention that Walker was falsely accusing defendant.
>
> Contrary to defendant's assertion, the prosecutor did not mischaracterize Yalondthe's testimony by stating that she was an eyewitness. The prosecution acknowledged that Yalondthe was not at the scene when the shooting occurred, but instead spoke with Walker in the immediate aftermath. As noted above, the prosecutor may argue the evidence. [citation omitted.] Furthermore, the prosecutor noted that Walker changed the way he identified the assailant during the course of his first two interviews with police. The prosecutor stated that while Walker initially only identified the shooter as Yalondthe's ex-boyfriend, he did this out of fear of defendant's family. The prosecutor noted testimony regarding the difficulty of getting witnesses to cooperate, as well as Walker's own testimony that he was intimidated by the presence of defendant's family while he was giving his initial interview to police. When viewed in context, it cannot be said that the prosecutor's statements regarding Yalondthe's and Walker's identifications denied defendant a fair and impartial trial.

*Remus*, 2016 WL 5930109, at *3.

There is nothing unreasonable about this ruling. It presents an accurate summary of the record. The prosecutor's argument that Walker identified Remus as the shooter was based upon Walker's trial testimony that Remus was the person that he saw drive by in the backseat of a car and fire gunshots at the house. (*See* ECF No. 9-6, PageID.586–590.) While Walker acknowledged that he first identified the shooter only as "Yalondthe's ex-boyfriend," he also testified that he later identified the shooter as "Derrick." (*Id.* at PageID.597–598, 600–603.) The prosecutor noted those facts and discussed the evolution of Walker's identification. (ECF No. 9-9, PageID.1062–1063.) The prosecutor's argument was based upon Walker's testimony and did not constitute misconduct.

Similarly, the prosecutor's argument relative to Yalondthe Williams' identification was based upon Williams' testimony that she was inside when the shooting occurred and when she went outside, Walker told her that Remus was the shooter. (ECF No. 9-6, PageID.536–537.) The prosecutor never claimed that Williams was an eyewitness to the shooting and instead made clear that Walker was the only witness who saw the shooting. (ECF No. 9-9, PageID.1063–1064, 1068–1069.) Thus, when viewed in the full context, the prosecutor's statements in his closing about the identification of Remus as the shooter were properly based upon the evidence.

Remus further argues that the prosecutor committed misconduct when he stated in his closing argument that the flash from a fired gun is "extremely bright" and that this extreme brightness allowed Walker to see who was firing the gun. Remus believes the prosecutor was arguing facts not in evidence because the brightness of a gun flash was not established by any expert testimony.

7

The Michigan Court of Appeals ruled on this argument as well. The court reiterated that "a prosecutor is permitted to argue all reasonable inferences from the evidence as it relates to his theory of the case" and found that:

> At trial, Walker testified that defendant fired a gun from the back seat of a vehicle. When asked if the flash from the gun illuminated defendant's face, Walker testified that it did. Walker then testified that he was sure that the flash was bright enough to show defendant's face. Given Walker's testimony that he could clearly see defendant's face even though the incident occurred during the early morning hours, the prosecutor made a reasonable inference that the gun produced a flash that was extremely bright. Furthermore, jurors are permitted to, and should, use their common sense and everyday experience when evaluating the evidence. *People v. Simon*, 189 Mich. App 565, 567–568; 473 NW2d 785 (1991). That a fired gun creates a bright light involves a matter that the jury could have inferred from their common knowledge and experiences. Even if the prosecutor's statement was improper, the trial court provided an instruction to the jury that the attorneys' statements and arguments are not evidence. Because any prejudicial effect of the prosecutor's remark would be minimal in light of Walker's testimony, this instruction was sufficient to cure any prejudice. *See Ackerman*, 257 Mich. App at 449.

*Remus*, 2016 WL 5930109, at *3–4.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The state court correctly determined that the prosecutor's comment about the brightness of the gun muzzle flash was a reasonable inference from Walker's testimony. And to the extent it could be characterized as improper, the statement was not so pervasive or misleading as to affect the fairness of the trial as a whole. The state court also correctly found that any potential prejudice to Remus was mitigated by the trial court's instructions to the jury about the proper consideration of the evidence and that the attorneys' arguments were not evidence. (*See* ECF No. 9-9,

PageID.1100–1102.) Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

In short, habeas relief is not warranted on Remus' prosecutorial misconduct claim.

### B. Ineffective Assistance of Counsel

Remus also raises a claim of ineffective assistance of counsel that is related to his prosecutorial misconduct claim. More specifically, Remus contends that his trial counsel was ineffective for failing to object to the challenged statements from the prosecutor's closing argument.

The Michigan Court of Appeals also adjudicated this claim on the merits. Having found no impropriety in the prosecutor's closing argument statements, the state court concluded that "any objection made by defense counsel would have failed. This Court has explicitly stated that '[c]ounsel is not ineffective for failing to make a futile objection.' Therefore, defendant was not denied his right to the effective assistance of counsel." *Remus*, 2016 WL 5930109, at *4 (citation omitted.) Thus, § 2254(d) applies.

Success on an ineffective-assistance-of-counsel claim requires Remus to point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And where § 2254(d) applies, as it does here, Remus must show that the state court unreasonably applied *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). As a result, the already deferential deficient-performance prong becomes "doubly so." *Id.*

Remus cannot clear this high hurdle. As discussed, the state court reasonably concluded that there was no misconduct from the prosecutor's closing argument. So, as the

9

state court ruled, any objection by counsel would have been futile. And counsel cannot be deemed ineffective for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Habeas relief is not warranted on this claim.

### IV. Conclusion

For the reasons stated, the Court concludes that Remus is not entitled to relief on his habeas claims and that the petition for a writ of habeas corpus must be denied.

Before Remus may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). In order to be entitled to a certificate of appealability, the petitioner must demonstrate "that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude that

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537

U.S. at 327. Remus makes no such showing. The Court concludes that a certificate of appealability is not warranted.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. See Fed. R. App. P. 24(a).

Accordingly, the Court DENIES and DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus, DENIES a certificate of appealability, and DENIES leave to proceed in forma pauperis on appeal.

IT IS SO ORDERED.

Dated: February 1, 2021

                                           s/Laurie J. Michelson
                                           LAURIE J. MICHELSON
                                           UNITED STATES DISTRICT JUDGE